b.        See Answer to Interrogatory No. 3.                                    **EXHIBIT A**

c.        All compensation has been paid.

d.        No written agreement was finalized.

INTERROGATORY NO. 6.

Please state if during the course of Nelson Rouette's employment with MECI if he was permitted to work for a company known as Quality Machine Solutions, Inc. If your answer is in the affirmative, please state if MECI placed any limitations on his ability to work for Quality Machine Solutions, Inc.

ANS.   MECI did not object to Rouette selling re-sharpened end mills in the Puerto Rican market for QMS.  MECI also did not object to Rouette selling a small amount of machinery and equipment outside of the Puerto Rican market for QMS with MECI's prior knowledge and consent.  When MECI objected to such sales and instructed Mr. Rouette to cease all such sales, Rouette continued with the sales despite his full time employment with MECI.

INTERROGATORY NO. 7.

Please state if during the course of Jay Nearis's employment with MECI if he was permitted to work for a company known as Quality Machine Solutions, Inc. If your answer is in the affirmative, please state if MECI placed any limitations on his ability to work for Quality Machine Solutions, Inc.

ANS.   No.

INTERROGATORY NO. 8.

Please state if Nelson Rouette breached any duty he owed to MECI. If your answer is in the affirmative please state:

a. A detailed description of the breach;

b. A detailed and itemized description of the damages MECI sustained as a result of the breach; and

c. A detailed description of any and all steps MECI undertook to mitigate the damages they received from said breach.

ANS.   As asserted in MECI's Counterclaim, during the course of Rouette's employment with MECI, Rouette breached his fiduciary duty to MECI.  While Rouette represented to MECI that he was associated with QMS (as President and Shareholder), Rouette further represented that the business was limited solely to the sale of re-sharpened end mills in Puerto Rico.  Rouette represented that he would devote his full efforts to MECI and that QMS would not be involved

in a similar business as MECI and that it would not interfere with his full time obligations and duties to MECI.

MECI, however, later learned that contrary to his representations, Rouette had been and was actively working for QMS and seeking to divert equipment line relationships from MECI and establish equipment line relationships on an exclusive basis for QMS. For example, in a letter dated February 19, 2004, Rouette communicated with officers of Kia in an effort to solicit Kia's equipment line on an exclusive basis and communicating to Kia a marketing plan in direct competition to his then employer, MECI. MECI also later obtained information that Rouette, on behalf of QMS, had entered into a purchase order for the sale by QMS of certain equipment to DFF Corporation, one of MECI's existing customers. Rouette, without DFF Corporation's knowledge or authorization, then altered the purchase order so that the four machines which were the subject of the original purchase order would be supplied by Absolute Machine Company, one of MECI's vendors. The altered purchase order deleted any reference to credits which were to be provided to DFF Corporation for the four pieces of equipment which were to be accepted from DFF Corporation in trade. The altered purchase order reduced the unit price and the total price of the four machines to be delivered to DFF Corporation to offset the credit obtained in the original purchase order. The purchase order was altered improperly and without MECI's authorization in part to allow QMS to retain the equipment which was used as a credit towards the original sales price, resell the equipment, and retain the profits generated therefrom.

In addition, during the term of Rouette's employment, Rouette falsely represented to MECI that he needed to receive from MECI a 10 inch chuck and 20 pull studs, with a combined value of $4,500.00 to deliver to DFF Corporation as part of the sale of the equipment. MECI learned from DFF Corporation that it never requested the chuck and pull studs and that it never received the equipment. Rouette either sold or retained the equipment without payment to MECI.

During Rouette's employment, MECI also learned and suspected that Rouette was seeking to establish additional competing equipment lines for QMS and was diverting additional sales from MECI to QMS.

In addition, during the terms of his employment with MECI, Rouette sold various machine and equipment to Topsfield Tool and Engineering through QMS. These surreptitious sales on behalf of QMS diverted opportunities and revenue from MECI to Rouette and his company and was in violation of Rouette's terms of employment and duties owed to MECI. MECI also has learned of various other sales on behalf of QMS by Rouette during his employment with MECI, including but not limited to, the sale of an Okuma and Howa HMC to Turbocare, the sale of a Nakamura lathe, and the sale of machinery to Metso Corporation. Upon information and belief, Rouette during his employment with MECI diverted various other sales of machinery, equipment, and servicing from MECI to QMS.

In short, during the term of his employment, Rouette had fiduciary duties to MECI, including, without limitation, duties of loyalty and disclosure. Rouette breached his duties in numerous respects, including but not limited to, diverting and attempting to divert lines of machinery and equipment from MECI to QMS, diverting the sale of machinery, equipment and servicing from

MECI to QMS, developing and operating a business in direct competition with MECI, and converting MECI money, property and equipment for his benefit.

Following the termination of his employment, Rouette contacted Monalex Manufacturing, Inc., one of MECI's customers and misrepresented that the sale of a machine by Rouette during the term of his employment with MECI belonged to QMS and not MECI. Rouette misrepresented that the payment for the machine should be sent not to MECI but rather to QMS. As a result of the false representations, Monalex has failed and refused to forward payment of $56,000.00 to MECI.

Rouette made additional false statements and representations to other customers, distributors and vendors of MECI, seeking to damage MECI's relationships with those parties to the unfair advantage of QMS. Both during his employment and after the termination of his employment, Rouette has tortiously interfered with MECI's relationships and agreements with its distributors, vendors, and customers.

Finally, Rouette had a duty to return MECI's equipment upon termination. Despite demand, Rouette has refused to return to MECI one Gateway laptop computer valued at $2,850.00 which had been provided to Rouette for his use during his employment with MECI.

Discovery is ongoing. MECI reserves the right to supplement its answer to this interrogatory prior to trial.

See also testimony of Fabien Dube and Norman Crepeau at Rouette's Unemployment Hearing.

INTERROGATORY NO. 9.

Please state if Jay Nearis breached any duty he owed to MECI. If your answer is in the affirmative please state:

a. A detailed description of the breach;

b. A detailed and itemized description of the damages MECI sustained as a result of the breach; and

c. A detailed description of any and all steps MECI undertook to mitigate the damages they received from said breach.

ANS. As asserted in MECI's Counterclaim, during the course of Nearis' employment with MECI, Nearis breached his fiduciary duty to his employer. Nearis represented that he would devote his full efforts to MECI. MECI, however, later learned that contrary to his representations, Nearis had been and was actively working for QMS and seeking to divert equipment line relationships from MECI and establish equipment line relationships on an exclusive basis for QMS. For example, in a letter dated February 19, 2004, Nearis communicated with officers of Kia in an effort to solicit Kia's equipment line on an exclusive

basis and communicating to Kia a marketing plan in direct competition to his then employer, MECI.

During the term of his employment, Nearis had fiduciary duties to MECI, including, without limitation, duties of loyalty and disclosure. Nearis breached his duties in numerous respects, including but not limited to, diverting and attempting to divert lines of machinery and equipment from MECI to QMS and diverting the sale of machinery, equipment and servicing from MECI to QMS.

Both during his employment and after the termination of his employment, Nearis has tortiously interfered with MECI's relationships and agreements with its distributors, vendors, and customers.

In addition, Nearis had a duty to return MECI's equipment upon termination. Despite demand, Nearis has refused to return to MECI one Gateway laptop computer valued at $2,850.00 which had been provided to Nearis for his use during his employment with MECI.

Discovery is ongoing. MECI reserves the right to supplement its answer to this interrogatory prior to trial.

See also testimony of Fabien Dube and Norman Crepeau at Nearis' Unemployment Hearing.

INTERROGATORY NO. 10.

Please state if MECI provided health insurance to Nelson Rouette during the course of his employment. If your answer is in the affirmative please state:

a. The name and address of the insurance carrier;

b. The date such insurance coverage began;

c. The date such insurance coverage ended;

d. Whether Nelson Rouette was given the opportunity to continue this insurance coverage after his employment ended with MECI; and

e. If Nelson Rouette was allowed to continue this insurance after his employment ended with MECI, please describe in detail all steps or actions undertaken to inform him of this ability.

ANS.

a. Aetna U.S. Healthcare, Philadelphia, PA

b. May 1, 2002

c. March 31, 2004