UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11534-MAP

| | |
|---|---|
| NELSON R. ROUETTE AND JAY NEARIS,<br><br>      Plaintiffs and<br>      Counterclaim Defendants<br><br>vs.<br><br>MACHINE & ELECTRICAL CONSULTANTS, INC., FABIEN DUBE, AND NORM CREPEAU,<br><br>      Defendants and<br>      Counterclaim Plaintiffs<br><br>MACHINE & ELECTRICAL CONSULTANTS, INC.<br><br>      Third-Party Plaintiff<br><br>vs.<br><br>QUALITY MACHINE SOLUTIONS, INC.<br><br>      Third-Party Defendant | **JOINT PRETRIAL MEMORANDUM** |

## PLAINTIFF'S EVIDENCE

On or about May 17, 2002, the Plaintiffs, Jay B. Nearis and Nelson R. Rouette, became employed by the Defendants, Fabien Dube, Norman Crepeau, and Machine and Electrical Consultants, Inc. for the purpose of acting as co-sales managers in the Defendants' business operations, by managing its New England sales force, including trade shows throughout the continental United States, additional coverage in Canada, Puerto Rico, Central America and South America.

1

On or about May 17, 2002, the Plaintiffs and the Defendants entered into a written contract defining the terms of the Parties' relationship. Pursuant to his employment agreement, the Plaintiff, Jay B. Nearis, was to receive a weekly salary of $1,000.00 as well as a 25% commission on all direct machine sales, and a 1.5% commission on each machine sold by the Defendants. Pursuant to his employment agreement, the Plaintiff, Nelson R. Rouette, was to receive a weekly salary of $1,000.00 as well as a 25% commission on all direct machine sales, and a 1.5% commission on each machine sold by the Defendants. The Plaintiffs remained in the employ of the Defendants through March 15, 2004, when the Defendants unlawfully terminated them.

During the course of the Plaintiff, Jay B. Nearis', employment, the Defendants failed and refused to pay the Plaintiff-earned commissions in the sum of approximately $545,000.00; $2,000.00 in weekly pay; $4,000.00 in accrued vacation time; and $1,852.36 in expenses. During the course of the Plaintiff, Nelson R. Rouette's, employment, the Defendants failed and refused to pay the Plaintiff-earned commissions in the sum of approximately $545,000.00; $1,000.00 in weekly pay; $4,000.00 in accrued vacation time; and $1,200.00 in expenses. The Defendants' refusal to pay said wages constitutes a violation of the provisions of MGL Chapter 149, Section 148.

As a result of said violation, a Complaint was filed with the Commonwealth of Massachusetts Office of the Attorney General, Fair Labor and Business Practice Division, on April 9, 2004. On or about May 4, 2004, The Plaintiffs were authorized to pursue their claims through a civil lawsuit.

**DEFENDANTS/COUNTERCLAIMANTS' EVIDENCE**

MECI employed Nelson Rouette as a co-sales manager for MECI commencing on May 17, 2002. He was paid a weekly wage of $1,550.00 per week. In late 2003, Rouette approached MECI regarding receiving commissions in addition to his weekly wage on the sale of machines in which he had been involved. MECI agreed to pay Rouette a 30% commission on machines mutually identified by the parties. While the parties also had preliminary discussions regarding payment of a 1.5% commission on all machines sold by MECI, the commission structure and the corresponding adjustments to Rouette's weekly wage and commissions were never finalized.

MECI's records confirm that Rouette has been fully paid all weekly wages and commissions due him. He is not entitled to accrued vacation. He has never submitted any verification of expenses. It is MECI's understanding that Rouette's claim regarding COBRA benefits will be dismissed. In addition, the claims of Jay Nearis, the co-manager, are no longer being pursued by Mr. Nearis.

During Rouette's employment with MECI, he and his wife also were the principals of Quality Machine Solutions ("QMS"). MECI did not object to Rouette selling re-sharpened end mills in the Puerto Rican market on behalf of QMS. MECI also did not object to Rouette selling a small amount of selective machinery and equipment outside of the Puerto Rican market on behalf of QMS with MECI's prior knowledge and consent. Unfortunately, during their employment relationship, Mr. Rouette did not seek MECI's consent for such sales. When MECI learned of certain sales, it objected to the sales and instructed Rouette to stop selling machinery and equipment outside of the Puerto Rican market. Nevertheless, Rouette continued with his surreptitious sales to MECI

established customers, using MECI established vendors, and in MECI's established market territories. The income from such sales were diverted to QMS.

For example, during his employment with MECI, Rouette sold various machinery and equipment to Topsfield Tool & Engineering and various other customers through QMS. These sales directly diverted opportunities and revenue from MECI to Rouette and QMS. In addition, in one instance, Rouette and QMS entered into a purchase order for the sale by QMS of certain equipment to DFF Corporation ("DFF"), one of MECI's existing customers. Rouette, without DFF's knowledge or authorization, then altered the purchase order so that the four machines which were the subject of the original purchase order would be supplied by Absolute Machine Company, one of MECI's vendors. The altered purchase order deleted any reference to credits which Rouette had agreed to provide to DFF for the four pieces of equipment which were to be accepted from DFF in trade. The altered purchase price reduced the unit price and the total price of the four machines to be delivered to DFF to offset the credit obtained in the original purchase order. The purchase order was altered without MECI or DFF's authorization. As a result, QMS retained the trade in equipment, resold the equipment and retained the profits. MECI was then obligated to honor the original agreement with DFF for the delivery of the four machines at the reduced purchase price. In another instance, Rouette falsely represented to MECI that he needed certain equipment as part of a sale to DFF. MECI delivered the equipment with a combined value of $4,500.00. MECI later learned from DFF that it had never requested the equipment or received the equipment. Nevertheless, Rouette and QMS retained the equipment for their benefit.

In addition to diverting equipment sales and machinery from MECI to QMS, during his full time employment with MECI, Rouette actively sought to divert equipment line relationships from MECI and establish relationships on an exclusive basis with QMS. For example, in a letter dated February 19, 2004, Rouette and QMS communicated with Hyundai-Kia Machine America Corporation in an effort to solicit Kia's equipment line in direct competition with MECI. Rouette did so without MECI's knowledge. Rouette also represented to Kia officers that he had resigned as an employee of MECI. Rouette then sold a series of Kia machines and equipment to Spargo Machine Products and Zebco Holdings, Inc. Despite Rouette's continued employment with MECI during the sales, Kia in apparent reliance upon Rouette's representation that he no longer worked for MECI paid a commission to QMS in excess of $118,000.00. QMS retained the full commission.

On March 15, 2004, as a result of Rouette's misconduct and breach of his fiduciary obligations, MECI terminated his employment. Following his termination, Rouette contacted Monalex Manufacturing, Inc., one of MECI's customers, and misrepresented that the sale of a machine by Rouette during his employment with MECI belonged to QMS and not MECI. Rouette misrepresented that payment for the machine should be sent to QMS. As a result, Monalex failed and refused to forward payment of the $56,000.00 balance to MECI. MECI was required to institute a lawsuit against Monalex to recover the machine. Rouette also wrongly interfered with MECI's advantageous vendor relationships, including Kia, ultimately resulting in Kia terminating MECI's exclusive dealer relationship.

Finally, MECI purchased a company computer and equipment for $2,962.70 for use by Rouette during his employment. Despite demand, Rouette has refused to return the computer as well as other confidential and proprietary business equipment and materials.

## AGREED TO FACTS

On or about May 17, 2002, Jay B. Nearis and Plaintiff Nelson R. Rouette, were employed by the Defendant Machine and Electrical Consultants, Inc. acting as co-sales managers.

## JURISDICTIONAL QUESTIONS

None.

## QUESTIONS RAISED BY PENDING MOTIONS

None.

## ISSUES OF LAW INCLUDING EVIDENTIARY QUESTIONS

As identified in the Complaint and Counterclaim.

## ANY REQUESTED AMENDMENTS TO PLEADINGS

Remove Jay Nearis from all pleadings.

## ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE CASE

None.

## PROBABLE LENGTH OF TRIAL AND WHETHER JURY OR NON-JURY

Jury trial lasting five to seven days.

## PLAINTIFF'S WITNESSES

1. Nelson Rouette, 127 Bumstead Road, Monson, Massachusetts.

    Mr. Rouette will testify regarding his employment relationship with the Defendant and commissions due and owing to him. Mr. Rouette will also testify that he did not unlawfully solicit the Defendants' customers and suppliers.

2. All witness's listed by the Defendants.

## PLAINTIFF'S EXHIBITS

1. The Plaintiff will use the vast majority of the exhibits listed by the Defendants.

2. The Plaintiff will use the Exhibits used in the deposition of Norm Crepeau.

3. The Plaintiff will use the financial documents regarding the price paid for certain machines, as well as the price the machine were sold for.

## DEFENDANTS/COUNTERCLAIMANTS' WITNESSES

See attached.

## DEFENDANTS/COUNTERCLAIMANTS' EXHIBITS

See attached.

| | |
|---|---|
| The Plaintiff/Counterclaim Defendant, <br> NELSON R. ROUETTE <br> By His Attorney | The Defendants/Counterclaim Plaintiffs <br> MACHINE & ELECTRICAL <br> CONSULTANTS, INC., FABIEN DUBE, <br> AND NORM CREPEAU, <br> By Their Attorney, |
| */s/Adam J. Basch, Esquire* <br> Adam J. Basch, Esquire <br> Bacon & Wilson, P.C. <br> 33 State Street <br> Springfield, MA 01103 <br><br> Ph: (413) 781-0560 <br> Fax: (413) 739-7740 <br> BBO#   655482 <br> Dated: September 21, 2006 | */s/Keith R. Jacques, Esquire* <br> Keith R. Jacques, Esquire <br> Smith Elliot Smith & Garmey, P.A. <br> 199 Main Street <br> P.O. Box 1179 <br> Saco, ME 04072 <br><br> Ph: (207) 282-1527 <br> Fax: (207) 283-4412 <br> BBO# <br> Dated: September 21, 2006 |

## **CERTIFICATE OF SERVICE**

I, Keith R. Jacques, hereby certify that a copy of the foregoing document was served by CM/ECF system which will send notification of such filing to the following:

Adam Basch, Esq.
ABasch@Bacon-Wilson.com


*/s/Keith R. Jacques*
Keith R. Jacques, Esq.